### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANDREW MCKINNON,

                  **Plaintiff,**

**v.**                                               **Case No. 20-cv-699-NJR**

**DENNIS LARSON and WEXFORD
HEALTH SOURCES, INC.,**

                  **Defendants.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Andrew McKinnon, who at the time he filed his Complaint was an inmate of the Illinois Department of Corrections and incarcerated at Big Muddy River Correctional Center,[1] brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Second Amended Complaint (Doc. 53), McKinnon alleges the following two Counts:

Count 1:     Eighth Amendment deliberate indifference claim against Dr. Dennis Larson for failing to treat prolonged and severe pain in McKinnon's shoulders, back, elbow, and knee.

Count 2:     Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for having policies and procedures that discouraged outpatient care, testing, imaging, and treatment, and resulted in the failure to provide McKinnon with appropriate treatment and testing.

(Doc. 53, pp. 6-7).

---

[1] McKinnon has since been released from IDOC custody and is serving mandatory supervised release (Doc. 53, p. 2).

This matter is before the Court on Defendant Wexford Health Sources, Inc.'s motion for summary judgment on the issue of administrative exhaustion (Docs. 64, 65).[2] Wexford argues that McKinnon failed to exhaust his administrative remedies as to Wexford when he failed to file any grievances related to Wexford's policies or procedures. McKinnon filed a response to the motion (Doc. 66). Wexford filed a reply brief (Doc. 67).

FACTUAL AND PROCEDURAL BACKGROUND

On July 16, 2020, McKinnon filed his Complaint (Doc. 1). After filing an Amended Complaint (Doc. 25), he was allowed to proceed on a single count alleging deliberate indifference against Dr. Larson for delaying and denying him medical care and specialists referrals for his painful medical conditions (Doc. 32). McKinnon was later assigned counsel (Doc. 50) who filed a Second Amended Complaint (Doc. 53). The Second Amended Complaint added an additional count against Wexford. Specifically, the Second Amended Complaint alleged Wexford had cost-cutting policies and procedures to reduce outpatient referrals to outside facilities and treaters (*Id*. at pp. 5, 7). McKinnon also alleged that Wexford had a policy to encourage conservative care in order to cut costs (*Id*.). The policies discouraged outpatient care, testing, imaging, and treatment (*Id*. at p. 7). McKinnon alleged that Dr. Larson acted pursuant to these policies when he refused to refer McKinnon for appropriate care, to an outside specialist, for diagnostic testing, or imaging (*Id*.).

---

[2] Defendant Dennis Larson earlier withdrew his affirmative defense of exhaustion (Docs. 45, 46).

Wexford identifies two grievances submitted by McKinnon during the relevant time period.[3]

**Grievance #59-4-19**: On April 14, 2019, McKinnon filed a grievance which is labeled as an issue with Orange Crush (Doc. 65-1, pp. 42-43). McKinnon suffered shoulder and neck pain from having his hands cuffed behind his back on February 22, 2019 (*Id*. at p. 42). He almost passed out while waiting and a nurse finally examined him, and his cuffs were transferred to the front (*Id*. at p. 43). McKinnon requested an x-ray from Dr. "Girzts" and Dr. Larson but he never received one (*Id*.). His request for relief sought an x-ray of his neck and shoulder, therapy, and a heated pad (*Id*. at p. 42). Responses from the prison indicated that x-rays are ordered based on a doctor's or physician assistant's professional judgment, not an offender's request (*Id*. at pp. 41, 42, 44). The grievance was fully exhausted (*Id*. at p. 40).

**Grievance #20-5-19**: The second grievance submitted during the relevant time period was dated May 5, 2019, and marked as a "safety and sanitation" and "staff conduct" issue (Doc. 65-1, pp. 47-48). McKinnon complained about slipping and falling on April 21, 2019, due to wet floors/steps (*Id*. at p. 47). He suffered injuries to his elbow, shoulder, and knee (*Id*.). He went to the healthcare unit and received a crutch (*Id*. at p. 48). A few days later, he saw Dr. Girzts and received an x-ray of his knee (*Id*.). He also received a wheelchair and low gallery permit and, at the time of writing his grievance, was still

---

[3] McKinnon does not dispute the grievances identified by Wexford, nor does he argue that he filed any additional grievances. Instead, he merely states that Wexford acknowledged he filed multiple grievances about medical treatment and that he followed the applicable procedures.

waiting to see Dr. Larson (*Id.*). He noted that he still had pain in his neck, upper back, and knee from the fall, which aggravated previous issues (*Id.*). He requested that this ongoing problem be fixed (*Id.* at p. 47). The counselor indicated that she interviewed McKinnon and that he was grieving that the floor was wet from being mopped, but acknowledged the floor is not wet anymore and staff use wet floor signs (*Id.*). The grievance was fully exhausted. The Administrative Review Board ("ARB") indicated the grievance was regarding conditions, specifically the lack of signs for the wet floor (*Id.* at p. 45). The grievance was ultimately denied by the ARB (*Id.*).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit

and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

A. **Illinois Exhaustion Requirements**

As an IDOC inmate, McKinnon was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that

the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

ANALYSIS

Because there are no disputes of material fact, the Court did not hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

Wexford points to two grievances relevant to McKinnon's claims. McKinnon's April 14, 2019 grievance (Grievance No. 59-4-19) was labeled orange crush and complained of injuries that he received while being handcuffed behind his back. He complained of not receiving an x-ray of his neck and shoulder and sought an x-ray, therapy, and a heated pad (Doc. 65-1, pp. 42-43). His May 5, 2019 grievance (Grievance No. 20-5-19) focused on his slip and fall on the wet floor. McKinnon did mention medical care that he received, and that he was waiting to be seen by Dr. Larson, but ultimately indicated his complaint was with the lack of floor signs on the wet floor (*Id*. at pp. 48-49). Although both grievances mention medical care for his injuries, neither grievance

mentions Wexford or any policies of Wexford that affected his care.

In response to Wexford's motion, McKinnon argues that he submitted multiple grievances and they were fully exhausted. He does not identify any additional grievances regarding his medical care. He argues that he was not required to specifically name any parties and the grievances were fully exhausted and not returned for any deficiencies. McKinnon is not required to point to a specific policy as the grievance process is not designed to provide a defendant with notice of the potential claims against them. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)). The grievance is designed to "alert the state to the problem and invite corrective action." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (internal quotations omitted). But neither of McKinnon's grievances provided information that would alert officials to an issue with Wexford. The grievances do not mention Wexford or any actions of Wexford. McKinnon's Second Amended Complaint alleges that Wexford had policies and procedures that discouraged outpatient care, testing, imaging, and treatment due to financial considerations. But nothing in his grievances includes any complaints about cost-saving issues or being denied care due to financial incentives. Further, neither of the grievances mentions imaging other than an x-ray; nor do the grievances mention requests for an outside specialist.

In his May 2019 grievance, McKinnon indicated he received an x-ray and was seen by a doctor. He specifically informed the counselor that the grievance was about the lack of signage, warning of a wet floor. At every level of the grievance process, his grievance was reviewed on the conditions of the cellhouse, not the medical treatment he received.

Page 8 of 10

Nothing in the grievance would have invited officials to look at the motivations for the treatment decisions.

McKinnon's April 2019 grievance does request an x-ray, therapy, and a heated pad. He also complains that he requested an x-ray from both treating doctors, and one was never scheduled. But nothing in the grievance indicates that either doctor was motivated by financial considerations or denied the request pursuant to any policy or practice. *Richmond v. Wexford Health Sources, Inc.*, Case No. 20-cv-143-RJD, 2021 WL 2157008 at * 4 (S.D. Ill. May 27, 2021) (grievance complaining about only receiving over-the-counter medications enough to implicate Wexford policy of only providing over-the-counter medications); *Henney v. McCarthy*, Case No. 19-cv-443, 2020 WL 5705791, at * 2 (S.D. Ill. Sept. 24, 2020) (grievance complaining about 24-hour vomiting rule was enough to grieve a Wexford policy); Diaz v. Baldwin, Case No. 18-cv-1426-RJD, 2021 WL 1401463, at * 3 (S.D. Ill. April 14, 2021) (grievance made no mention that the nurse who failed to take action "did so pursuant to any policy or practice"). Nor does it mention Wexford or complain that Wexford was involved in the decision to deny his request for an x-ray. Nothing in the responses indicate that the officials were aware that McKinnon was complaining about Wexford or a policy/practice of any healthcare officials. The grievance officials indicated that x-rays are not ordered based on an offender's request, but on the doctor's professional judgment. Simply put, the grievance did not alert officials to any issues with Wexford or the financial motivations to deny treatment. Thus, the Court finds that Wexford has met its burden of proving that McKinnon did not exhaust his administrative remedies.

CONCLUSION

For the reasons stated above, Wexford Health Sources, Inc.'s motion for summary judgment (Docs. 64, 65) is **GRANTED**, and the claims against Wexford are **DISMISSED without prejudice** for McKinnon's failure to exhaust his administrative remedies. The Clerk is **DIRECTED** to enter judgment at the close of the case.

**IT IS SO ORDERED.**

DATED:   **June 3, 2022**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**